# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **CHRISTOPHER E. SMITH** | **CIVIL ACTION NO. 21-2651-P** |
| **VERSUS** | **JUDGE HICKS** |
| **DUSTI WILLIAMS, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the court is a civil rights complaint filed by pro se plaintiff Christopher E. Smith, ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on August 19, 2021. He is currently incarcerated at the David Wade Correctional Center but claims his civil rights were violated by prison officials while incarcerated at the Claiborne Parish Detention Center in Homer, Louisiana. Plaintiff names Dusti Williams, Nurse Smith, the Claiborne Parish Detention Center, and the Claiborne Parish Sheriff Sam Dowies as defendants.

Plaintiff was transferred to the Claiborne Parish Detention Center on June 29, 2020. He was examined by the medical staff on June 30, 2020 and he told Nurse Smith and Nurse Wade that he was diagnosed with a hernia on April 18, 2020. He claims Dr. Nelson at Caddo Correctional Center diagnosed him with single lower left abdominal hernia which needed to be surgically repaired. He claims he was told that they would have to get his

medical records from the Caddo Correctional Center. Plaintiff claims he should not have been transferred to the Claiborne Parish Detention Center because of his medical conditions.

Plaintiff claims that in August of 2020, he saw a visiting nurse practitioner and she confirmed he had a hernia. He claims he was then scheduled to see a doctor at LSU Monroe and in September of 2020 the doctor diagnosed him with two lower abdominal hernias. He claims he had one hernia on the left side and one hernia on the right side. He claims he was told he needed to be careful and have the hernias repaired as soon as possible. He claims he returned to LSU Monroe two weeks later for a sonogram.

Plaintiff claims that in September or October of 2020, he was taken to a hospital in Homer for a pre-surgery EKG, chest x-rays, and blood work. He claims that in November of 2020, he was informed that he was a diabetic and his surgery was postponed until his diabetes was under control.

In December of 2020, Plaintiff asked Nurse Wade if she had heard anything about his surgery and she replied no. In January of 2021, he asked Nurse Smith if she had heard anything about his surgery, and she stated that he had refused treatment and his surgery was cancelled. He claims he attempted to tell Nurse Smith that he did not refuse treatment, but the guard told him to be quite or he would be taken to disciplinary lock-down. In February of 2021, Plaintiff asked about his surgery and he claims he was told by Nurse Smith that there was nothing wrong with him. He claims there was no reply when he asked why he had to do pre-surgery testing.

Plaintiff claims he wrote a grievance to the DOC Headquarters asking for a second opinion and a medical transfer. He claims he did not receive an answer. Plaintiff claims that on May 3, 2021, Warden Williams told him that his grievance was sent to DOC and his case was closed. He claims Warden Williams then told him that she checked, and nothing was wrong with him. He claims Warden Williams told him to stop having his family call the jail staff and that he must be a hypochondriac.

Plaintiff claims that in May of 2021, he filed a sick call request and saw the visiting nurse practitioner. He claims the nurse practitioner told him he had hernias.

Plaintiff claims that in June of 2021, he saw a surgeon at LSU Conway, and he confirmed that he had hernias. He claims that in July of 2021 he saw a cardiologist who scheduled testing for surgery clearance. He claims that in August of 2021, he had a nuclear stress test and a cat scan with contrast. He claims that in September of 2021, he saw a vascular surgeon and received clearance for surgery. He claims that in September of 2021 he saw a surgeon and was put on the surgery list.

Plaintiff claims he has been in constant pain since April of 2020 due to the negligence in his medical treatment. He claims his hernias have not been repaired. He claims he now has two or three hernias. He claims he has problems using the bathroom because of the hernias. He claims he also has heart and femoral artery issues which he tried to explain to the medical staff in June of 2020. He claims the medical staff did nothing to help him get treatment or transferred to a DOC medical facility. He claims both Warden Williams and Nurse Smith denied him a second opinion.

Plaintiff admits that he was prescribed a stool softener and given Ibuprofen to ease his pain and relieve pressure on his hernias. He claims he should have been given a second mat and pillow. Plaintiff believes the delay in having hernia surgery has caused him damage and possible long term irreversible damage. Accordingly, Plaintiff seeks monetary compensation and an investigation of the facility.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied proper treatment for his hernias. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96

S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff was examined by the medical staff on June 30, 2020. He was examined by a nurse practitioner in August of 2020. He was examined by a doctor at LSU Monroe in September of 2020 and several weeks later he had a sonogram. In September or October of 2020, Plaintiff was taken to the hospital for a pre-surgery EKG, chest x-rays, and blood work. In May of 2021, Plaintiff saw a nurse practitioner. In June of 2021, he saw a surgeon at the hospital. In July of 2021, Plaintiff saw a cardiologist. In August of 2021, Plaintiff

had a nuclear stress test and a cat scan without contrast. In September of 2021, Plaintiff saw a vascular surgeon. In September of 2021, Plaintiff also saw a surgeon and was placed on the surgery list. Plaintiff admits he was prescribed a stool softener and was given Ibuprofen to ease his pain and relieve pressure on his hernias. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege how the alleged delay in surgery for his hernias was based on deliberate indifference when the surgery was postponed because of his diabetes not being under control.

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have had surgery for his hernias. He claims he should have had a second opinion. He claims he should have been given a second mat and pillow. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not

constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Transfer**

Plaintiff claims he should have been transferred to a DOC medical facility because of his medical conditions. The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).Thus, Plaintiff has no right to challenge his place of incarceration.

Accordingly, Plaintiff's claims regarding his place of incarceration should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law

or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 23rd day of March, 2023.

Mark L. Hornsby
U.S. Magistrate Judge